### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Eisenmann-Avilés** | |
| *Plaintiff,* | |
| **v.** | Civ. No. 25-01601 (MAJ) |
| **Municipality of Coamo, et al.,** | |
| *Defendants.* | |

## OPINION AND ORDER

### I.      Introduction

Daniel Reinaldo Eisenmann-Avilés ("Plaintiff") filed this action against the Municipality of Coamo ("Municipality") and various other defendants (collectively "Defendants"),[1] seeking judicial intervention to prevent the Municipality from exercising its eminent domain powers to appropriate a parcel of real property held by Plaintiff. Plaintiff seeks equitable and legal relief under 42 U.S.C. § 1983, (**ECF No. 10 at 15**), the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, (**ECF No. 10 at 16**), and various tort claims for negligence, trespass, conversion, defamation, abuse of process, intentional infliction of emotional distress, and punitive damages under the Puerto Rico Civil Code. (**ECF No. 10 at 20−31**).

Shortly after filing the Complaint, Plaintiff moved for a preliminary injunction. (**ECF No. 13**). That motion was referred to the Honorable United States Magistrate

---

[1]      The other Defendants include officers of the Municipality, various Coamo "community representatives," multiple private entities, the Puerto Rico Department of Natural and Environmental Resources and its officials, as well as various unidentified individuals (collectively "Defendants). (**ECF No. 10 at 3−7**).

Civ. No. 25-01601 (MAJ)                                                          Page 2

Judge Hector L. Ramos-Vega ("Judge Ramos") for a Report and Recommendation. (**ECF No. 15**). On March 5, 2026, Judge Ramos issued a Report and Recommendation in which he recommended that the Court deny the motion for a preliminary injunction and stay the case pending resolution of parallel state proceedings. (**ECF No. 73**). Plaintiff timely filed an objection to the Report and Recommendation. (**ECF No. 82**). While awaiting resolution of Plaintiff's request for a preliminary injunction, the Municipality and its mayor, Carlos García Padilla, moved to dismiss or stay the case on abstention grounds in light of the parallel state proceedings that remain ongoing in the Court of the First Instance of San Juan. (**ECF No. 32**). For the reasons that follow, the Court adopts in part and rejects in part the Report and Recommendation, denies the pending motion for a preliminary injunction without prejudice, and holds that abstention is warranted. This case is hereby **STAYED** pending the complete resolution of parallel state level proceedings.

## II.   Factual Background

The Municipality of Coamo is a town in the south of Puerto Rico. In November 2021, Plaintiff purchased a parcel of real property in Barrio Pasto, an administrative subdivision of Coamo. (**ECF No. 10 at 8 ¶ 19**). At the far end of Barrio Pasto sits La Cuesta, a small, low-income community. (**ECF No. 73 at 3**).[2]

Barrio Pasto is serviced by several local aqueducts, since Puerto Rico Aqueduct and Sewer Authority ("PRASA") infrastructure does not extend throughout the entire subdivision. Historically, La Cuesta relied on an aqueduct that drew from a local spring.

---

[2]   The Court draws from the facts set forth in the Report and Recommendation, as Plaintiff raises no objection to the same.

Civ. No. 25-01601 (MAJ)                                                    Page 3

Water flowed down from the spring to La Cuesta, which sits on a hillside (as the Spanish name of the town implies). In approximately 2014 or 2015, the spring ran dry and the community was left without water. (**ECF No. 73 at 3**).

To keep water flowing to La Cuesta, the community formed an agreement with one Ramón Sánchez ("Sánchez"), who was then the owner of a parcel of land at issue in this litigation.[3] Sánchez allowed the community to access a deep water well on his 51-acre property; in turn, the Municipality invested in the well by developing infrastructure to extract the water and deliver it to the people. (**ECF No. 73 at 3–4**). Such infrastructure included the construction of a utility room and the placement of an electrical meter so that the La Cuesta community could connect the well to its water distribution system. (**ECF No. 10 at 9 ¶¶ 24–25**). At the same time, the Municipality of Coamo assisted community members with incorporating La Cuesta as a formal subdivision of Coamo, and a community association representing La Cuesta was formed. (**ECF No. 73 at 4**).

In 2021, for approximately $70,000, Plaintiff acquired the parcel from an investment firm that had purchased the land from a portfolio of foreclosed properties. (**ECF No. 73 at 4–5**). Negotiations over the community's use of the well then commenced. As Plaintiff sought to revert the use of the well to his private control, he encountered resistance on multiple fronts. According to the Complaint, when Plaintiff asserted his private property rights over the well, the Mayor of Coamo invoked his "responsibility to provide water to [the La Cuesta] community" and assured Plaintiff that

---

[3]      Plaintiff disputes that Sánchez was the rightful owner of the parcel at the time of these events. The Court takes no position on this factual dispute at this stage of the litigation, since it is immaterial to this Opinion and Order. The Court refers to these allegations solely for the purposes of providing factual background.

Civ. No. 25-01601 (MAJ)                                                      Page 4

he "would not let the well go." (**ECF No. 10 at 9 ¶ 27**). Later, when Plaintiff attempted to register an electrical account with defendant Luma Energy Puerto Rico ("Luma Energy"), he "discovered that the meter was registered under 'Comunidad La Cuesta'" and "Luma Energy refused to disconnect the unauthorized connection." (**ECF No. 10 at 9– 10 ¶¶ 29–33**). Plaintiff also faced resistance from the Puerto Rico Department of Natural and Environmental Resources ("Departamento de Recursos Naturales y Ambientales"), which at one point "issued an administrative order compelling Plaintiff to permit community access to [the] well." (**ECF No. 10 at 11 ¶ 43**). In addition, Plaintiff alleges that he was the subject of a campaign of misleading and defamatory local news reports that portrayed him as a vandal and an obstacle to public health. (**ECF No. 10 at 12 ¶ 50**).

Between 2022 and 2025, Plaintiff engaged in negotiations with the Municipality and members of the La Cuesta community over access to the well. (**ECF No. 73 at 5**); (**ECF No. 10 at 9–13**). In several proposals made by Plaintiff, the community would have had access to the well in exchange for a fee. (**ECF No. 1-3 at 108–112**). After protracted negotiations, the parties failed to reach an agreement over those terms. (**ECF No. 73 at 5–6**). In the meantime, Plaintiff had allegedly cut off community access to the well. As a result, La Cuesta went without regular access to water for approximately two years and three months, during which time the Municipality sent more than 500 water trucks to the community to provide water. (**ECF No. 73 at 5**).

The sustained period of water insecurity plaguing La Cuesta posed a serious threat to public health. The Municipality therefore decided to exercise its eminent domain power, initiating a condemnation action in the Superior Court of Coamo ("Superior

Civ. No. 25-01601 (MAJ)                                                    Page 5

Court") on July 10, 2025. (**ECF No. 73 at 6**); (**ECF No. 10 at 13 ¶ 59**). Seeking to expropriate a small portion of the property necessary for the operation of the well, the Municipality deposited $36,000 in the Superior Court as compensation for the taking. (**ECF No. 73 at 6**). According to Plaintiff, however, the taking entirely compromised the utility of the property. (**ECF No. 73 at 6**). On August 20, 2025, the Superior Court ordered the immediate delivery of a portion of Plaintiff's property to the Municipality. (**ECF No. 10 at 13 ¶ 61**). The Superior Court held that just compensation would be due to Plaintiff, and that such compensation would be determined in subsequent proceedings. (**ECF No. 73 at 6**).

Plaintiff identifies two alleged flaws in the condemnation proceedings. First, Plaintiff alleges that, when the Municipality initiated condemnation proceedings against his property, he was never properly served notice of the lawsuit. (**ECF No. 10 at 13 ¶ 60**); (**ECF No. 13 at 2**). Plaintiff argues that such actions violated the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution. (**ECF No. 82 at 5**). Second, Plaintiff alleges that the Superior Court failed to observe the requirements of the Servicemembers Civil Relief Act ("SCRA"), which provides procedural protections for military service members like Plaintiff to guard against the risk of a default judgment while they are on active duty. (**ECF No. 13 at 2**) (citing 50 U.S.C. § 3931). "At its core," Plaintiff argues, "this case presents the question of whether governmental actors may assume control of private property and integrate it into a public infrastructure system while disregarding the procedural protections mandated by federal law and the Constitution." (**ECF No. 82 at 2**).

On October 20, 2025, Plaintiff appeared *pro se* and moved the Superior Court to vacate its prior order transferring title to the land to the Municipality. (**ECF No. 73 at 6**). On November 10, 2025, the Superior Court denied that request. In the order denying the motion to vacate, the Superior Court acknowledged that Plaintiff had not yet been properly served; however, the court found that, under the Puerto Rico Rules of Civil Procedure, the condemnation proceedings were "in rem" in nature. Therefore, according to the Superior Court, the lack of notice to Plaintiff did not affect the power of the court to order the transfer of the land subject to the suit. Instead, the lack of notice to Plaintiff only affected the "just compensation" and "public purpose" components of the suit, issues which had not yet been litigated. The Superior Court held that it would only address those matters once Plaintiff had been properly served and denied the motion to vacate its prior order transferring title to the property in dispute. (**ECF No. 73 at 8**).

Plaintiff filed an interlocutory appeal to the Puerto Rico Court of Appeals, which was denied. (**ECF No. 73 at 8**). Plaintiff then filed a petition for a writ of certiorari to the Supreme Court of Puerto Rico, which has not yet issued a ruling on the petition. (**ECF No. 73 at 9 n.6**). In the meantime, at the request of Plaintiff, the Superior Court stayed the case until May 2026.

On November 10, 2025, Plaintiff filed this case. (**ECF No. 1**). Shortly thereafter, he moved for preliminary injunctive relief, requesting that the Court prohibit the enforcement of the August 20, 2025 Superior Court order and the occupation or use of his property. (**ECF No. 13**).[4] The Municipality opposed, arguing that the relief sought

---

4        In the same motion, Plaintiff also moved for a Temporary Restraining Order, which was denied. (**ECF No. 14**).

was barred by the Anti-Injunction Act, and moved for dismissal on that ground. (**ECF No. 32**).

That request was referred to Judge Ramos for a Report and Recommendation. (**ECF No. 15**). After holding an evidentiary hearing, Judge Ramos issued a Report and Recommendation on March 5, 2026, recommending that Plaintiff's request for a preliminary injunction be denied and that the Court dismiss or stay the case. (**ECF No. 73 at 12–18**). Plaintiff filed a timely objection to the Report and Recommendation. (**ECF No. 82**).

## III.    The Report and Recommendation

In the Report and Recommendation, Judge Ramos carefully addressed Plaintiff's request to "enjoin enforcement of [a state court order] he claims violate[d] his federal constitutional and statutory rights." (**ECF No. 73 at 11**). According to Judge Ramos, Plaintiff faced two significant doctrinal hurdles obstructing his path to relief: the Anti-Injunction Act and *Younger* abstention doctrine.

As Judge Ramos explained in the Report and Recommendation, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." (**ECF No. 73 at 13**) (quoting 28 U.S.C. § 2283). Noting that the state-level "eminent domain litigation [in dispute] is ongoing," and emphasizing how "[t]he State Court has taken steps to make sure that [Plaintiff] has an opportunity to be heard on those issues[,]" Judge Ramos concluded that, "[c]ontrary to Plaintiff's arguments, if this Court was to issue a preliminary injunction restoring title and possession of the property to him, it would in

effect be passing judgment on the validity of the rulings of the State Court and interfering with the ongoing state litigation." (**ECF No. 73 at 13**). "It is this type of interference[,]" Judge Ramos concluded, "that the [Anti-Injunction Act] was enacted to prevent." (**ECF No. 73 at 13**). In a written objection to the Report and Recommendation, Plaintiff argued that Judge Ramos misapplied the Anti-Injunction Act by failing to apply Supreme Court precedent holding that 42 U.S.C. Section 1983 creates an "expressly authorized" exception to the Act. (**ECF No. 82 at 4**) (citing *Mitchum v. Foster*, 407 U.S. 225, 242-243 (1972)). In the Report and Recommendation, Judge Ramos directly addressed that precedent in a footnote, explaining that he was "mindful that the amended complaint invokes 42 U.S.C. § 1983 and that the [Act] does not apply to section 1983 actions." (**ECF No. 73 at 14 n.10**). However, Judge Ramos nevertheless concluded that Plaintiff "cannot escape the application of the [Anti-Injunction Act] simply by citing section 1983 when his request for injunctive relief, if properly construed, is for an order directed at the State Court." (**ECF No. 73 at 14 n.10**). "[T]his is the type of relief that the [Anti-Injunction Act] prohibits[,]" Judge Ramos concluded. (**ECF No. 73 at 14 n.10**) (citing *Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297 (1970)).

As to the issue of abstention, Judge Ramos concluded that *Younger* abstention is warranted in this case. (**ECF No. 73 at 14 n.10**). Observing the "principles of equity, comity, and federalism," from which *Younger* abstention doctrine arose, Judge Ramos determined that all three requirements of Younger were met. First, Judge Ramos found that "*Younger* abstention applies in the context of ongoing eminent domain proceedings in state court." (**ECF No. 73 at 15**) (citing *Duty Free Shop, Inc. v. Administración de Terrenos de Puerto Rico*, 889 F.2d 1181, 1182 (1st Cir. 1989)). Second, Judge Ramos

concluded that "there is 'an ongoing state judicial proceeding' that 'implicate[s] important state interests' and offers 'an adequate opportunity . . . to raise constitutional challenges.'" (**ECF No. 73 at 15**) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Finally, Judge Ramos considered whether Plaintiff had presented any evidence of bias or unfairness in the state proceedings and concluded that "no exceptions to *Younger* abstention apply in this case." (**ECF No. 73 at 17**).

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

In the written objection to the Report and Recommendation, Plaintiff objected to the recommended application of *Younger* abstention doctrine. First, Plaintiff cited to the recent Supreme Court case *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), arguing that "*Knick* squarely rejected the notion that federal courts must abstain from hearing federal takings claims simply because a state eminent domain process exists or is ongoing." (**ECF No. 82 at 7**). In addition, Plaintiff emphasized "that *Younger* abstention is the exception, not the rule." (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). According to Plaintiff, the instant case falls squarely within the "recognized limitations" on *Younger* doctrine for proceedings that are "conducted in bad faith," that fail to "provide an adequate opportunity to vindicate federal rights," or that display "extraordinary circumstances . . . that threaten irreparable injury to federally protected rights." (**ECF No. 82 at 11**) (citing *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). Specifically, Plaintiff argues that the eminent domain proceedings in the state court were characterized by "bad faith" because "Defendants pursued the expropriation proceeding despite knowledge of Plaintiff's active duty military status and without complying with the procedural

protections required by the Servicemembers Civil Relief Act" and because, since appearing in the state litigation, "Plaintiff has . . . experienced significant difficulty presenting a defense in the state proceeding" based on his status as a pro se litigant. (**ECF No. 82 at 11 −12**). Plaintiff thus argues that the state-level condemnation proceedings present a forum that will not adequately protect federal rights. On that basis, Plaintiff urges the Court to entertain the instant case notwithstanding the ongoing state-level proceedings.[5]

## IV.    Analysis

This case raises a question that tests the proper boundaries of our federal system: under what circumstances may a federal court intervene in ongoing state-level judicial proceedings to vindicate a claim of federal right? Plaintiff argues that immediate federal intervention is necessary, lest the state be allowed to "assume control of private property . . . while disregarding the procedural protections mandated by federal law and the Constitution." (**ECF No. 82 at 2**). Defendants disagree, arguing that federal intervention in the state-level proceedings would defy the principles of comity that order the relationship between federal and local tribunals. (**ECF No. 103 at 4**).

Recently, in *Knick v. Township of Scott, Pennsylvania*, the Supreme Court set out to resolve a "Catch-22" posed to litigants who sought to challenge state-level condemnation proceedings on federal law grounds. 588 U.S. 180 (2019). Prior to *Knick*,

---

[5]    Plaintiff's written objections to the Report and Recommendation also address each of the four factors for emergency injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, i.e. likelihood of success on the merits, likelihood of irreparable harm in the absence of relief, the balance of the equities, and the public interest. *See* FED. R. CIV. P. 65. Since the Court determines that abstention is warranted, as explained below, the Court will not entertain Plaintiff's request for injunctive relief at this time. The pending motion for a preliminary injunction is therefore denied without prejudice.

a property owner who had suffered a "taking" at the hands of local government could not bring a federal taking claim in federal court "until a state court ha[d] denied his claim for just compensation under state law." *Knick*, 588 U.S. at 184 (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). On the other hand, "a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." *Knick*, 588 U.S. at 184 (citing *San Remo Hotel, L. P. v. City and County of San Francisco*, 545 U.S. 323 (2005)). The federal takings plaintiff thus found himself in a quandary: the prerequisite to reach federal court–exhaustion of state level proceedings–would itself preclude federal intervention once satisfied. *Id.* at 184–185 ("He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning.").

To resolve this quandary, *Knick* did away with the requirement that a federal takings plaintiff exhaust state remedies before reaching federal court. *Knick*, 588 U.S. at 190 ("The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner."). The takings claim raised by Plaintiff is therefore ripe for resolution, as Plaintiff argues in his objection to the Report and Recommendation. However, although Plaintiff's claims have accrued, that alone does not guarantee that the exercise of federal jurisdiction is proper at this time.

The Court agrees with the Report and Recommendation that *Younger* doctrine requires the Court to abstain from presiding over the instant case pending the resolution of the parallel state-level proceedings. First, as the Report and Recommendation correctly

notes, *Younger* applies in the context of ongoing eminent domain proceedings in state court. *Duty Free Shop, Inc. v. Administración de Terrenos de Puerto Rico*, 889 F.2d 1181, 1182 (1st Cir. 1989). Second, those state-level proceedings remain ongoing. *Maymo-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 35 (1st Cir. 2004) (noting that a "proceeding [is] 'ongoing' for Younger purposes until the state appellate process [i]s complete") (internal quotations omitted). Third, the record before the Court confirms that the parallel state-level proceedings "implicate[] important state interests" and offer "an adequate opportunity . . . to raise constitutional challenges[.]" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Indeed, the underlying eminent domain proceeding involves a pressing sovereign prerogative, that is, ensuring clean water access to the population. *See Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25 (1959) (abstention appropriate because eminent domain proceedings are "special and peculiar," and "intimately involved with sovereign prerogative"). Moreover, Plaintiff has not established that the state proceedings here are marked by "bias" or an intent to harass, or that interlocutory or final appellate review is unavailable to him at the state level. *See Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 218–225 (1st Cir. 2004). Instead, as the Report and Recommendation summarized, "Mr. Eisenmann has actively litigated the State Court case. He has presented the arguments of lack of proper notice and due process. He has also twice availed himself of discretionary interlocutory appellate review in the Puerto Rico Court of Appeals and his petition for certiorari in the Puerto Rico Supreme Court is currently pending." (**ECF No. 73 at 16**). The Court therefore finds that *Younger* abstention is warranted. [6]

---

[6]     The Report and Recommendation also recommended that the Court rely on the Anti-Injunction Act in resolving the Motion for a Preliminary Injunction. Under the Anti-Injunction Act, "[a] court of the

The fact that Plaintiff's claim has accrued does not change this analysis: as a recent decision from this District held under analogous circumstances, abstention may be appropriate in the context of a federal civil rights claim challenging a state court eminent domain action even where the federal claim has accrued. *See Concilio de Salud Integral de Loiza, Inc. v. Municipality of Rio Grande,* Civ. No. 21-0510, 2025 WL 1604075 (D.P.R. June 6, 2025) (applying *Pullman* abstention). *Concilio de Salud Integral* arose from an alleged taking of private property by the Municipality of Río Grande, which initiated a state level condemnation proceeding against Concilio de Salud Integral *after* the latter had filed a federal suit challenging the taking as a violation of federal constitutional law. *Id*. at *1 –2. While acknowledging that *Knick* had dissolved the exhaustion and ripeness hurdles that had previously been an obstacle to such claims, the Court nevertheless found in *Concilio de Salud Integral* that "*Knick* [did] not limit a district court's ability to abstain from a federal takings claim under the *Pullman* doctrine because of a related eminent domain action that was pending in state court." *Id.* at *3 (quoting *CKC Properties, LLC v.*

United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Anti–Injunction Act is an historical mechanism . . . for achieving harmony in one phase of our complicated federalism by avoiding needless friction between two systems of courts having potential jurisdiction over the same subject-matter." *Casa Marie, Inc. v. Superior Ct. of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252, 261 (1st Cir. 1993) (quoting *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 378 (1939)) (internal quotations omitted). In general, the Anti-Injunction Act operates as a categorical ban on federal courts enjoining state-level proceedings. However, there are several narrow exceptions to its applicability, including actions under Section 1983 that seek federal injunctive relief against state court proceedings. *See Mitchum v. Foster*, 407 U.S. 225, 242–243 (1972) (recognizing that "federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights."); *Casa Marie*, 988 F.2d at 267 n.17 (noting that "section 1983 claims come within an 'express' exception to the Anti-Injunction Act") (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *Colón-Rodríguez v. López-Bonilla*, 94 Fed. Appx. 847, 848 (1st Cir. 2004); s*ee also McNeese v. Board of Ed. for Community Unit School Dist.*, 187, 373 U.S. 167, 183 (1963). However, because the Court will abstain from entertaining this action until the complete resolution of the parallel state-level case, the Court need not determine whether or not the Anti-Injunction Act also would prevent the Court from entertaining this suit. *See Soscia Holdings LLC v. Town of Coventry*, Civ. No. 25-274, 2026 WL 696902, at *6–*7 (D.R.I. Mar. 12, 2026); *see also Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction ... should be resolved in favor of permitting the state courts to proceed....").

*Town of Mt. Pleasant*, Civ. No. 23-4489, 2024 WL 39067, at *7 (D.S.C. Jan. 3, 2024))
(citing *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1148 (9th Cir. 2022)).
"[R]ipeness," the Court explained, "goes to when a claim accrues for purposes of judicial
review[,]" while "[a]bstention, on the other hand, allows courts to stay claims that have
already accrued." *Id.* (internal quotations and citations omitted). The Court then went on
to find that all "*Pullman* requirements [were] satisfied[.]" *Id.* at *4. Because here all of the
requirements for *Younger* abstention are satisfied, the Court finds that the same result is
warranted here.

Furthermore, even if *Younger* abstention were not applicable, the Court would
apply *Pullman* abstention. "The Supreme Court has directed that, in certain
circumstances, a federal court should abstain from reaching a federal constitutional issue
where it is likely that the dispute could be resolved (or narrowed) in state court under
state law." *Greenwood, LLC v. City of Newton*, 128 F.4th 1, 4 (1st Cir. 2025) (citing *R.R.
Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941)). This doctrine, known as *Pullman*
abstention, allows courts "to avoid resolving . . . federal questions by encouraging a state-
law determination" first, and "serves to avoid federal-court error in deciding state-law
questions antecedent to federal constitutional issues." *Id.* (internal quotations and
citations omitted).

"Under the [*Pullman*] doctrine, declining to exercise jurisdiction is warranted
where (1) substantial uncertainty exists over the meaning of the state law in question, and
(2) settling the question of state law will or may well obviate the need to resolve a
significant federal constitutional question." *Batterman v. Leahy*, 544 F.3d 370, 373 (1st
Cir. 2008). This case meets both of those requirements. First, in the parallel state-level

Civ. No. 25-01601 (MAJ)                                                             Page 15

litigation, the parties are litigating questions of Puerto Rico law regarding service of process, (**ECF No. 10 at 13 ¶ 60**), rightful title to the land in dispute, (**ECF No. 73 at 4 n.2**), the proper sequence of a state-level *in rem* condemnation proceeding under Puerto Rico law, (**ECF No. 73 at 8**). There is substantial uncertainty as to the proper resolution of those issues: Plaintiff himself contends that the Puerto Rico Court of Appeals misapplied the local rules of civil procedure on the specific facts of the condemnation proceedings below, (**ECF No. 68-1 at 6**), and that the Court of Appeals decision violated the property rights guaranteed to Plaintiff under the Constitution of Puerto Rico, (**ECF No. 68-1 at 4**). Moreover, as the First Circuit has previously acknowledged, *Pullman* abstention may be "particularly" appropriate where, as here, "a constitutional question implicates issues of land-use planning–a sensitive area of social policy into which the federal courts should not lightly intrude." *29 Greenwood LLC*, 128 F.4th at 4 (internal quotations omitted). Second, depending on how relevant state-law issues are resolved in the parallel litigation proceeding through the Puerto Rico courts, the federal constitutional issues raised by this case may never need to be resolved: the state law issues disputed between the parties "may well obviate the need to resolve a significant federal constitutional question." *Batterman*, 544 F.3d at 373. The Court therefore finds that abstention is appropriate.[7]

---

[7]     Defendants also argue that the Court should abstain under another distinct abstention doctrine, *Colorado River*. *See Colorado River Water Conservation Dist.*, 424 U.S. 800, 802 (1976). Because the Court finds that *Pullman* and *Younger* doctrines each require abstention, the Court need not address the applicability of *Colorado River* doctrine.

## V.    Conclusion

For the foregoing reasons, the Court will abstain from adjudicating this case until the complete resolution of the parallel state case. Accordingly, 13 "Motion for a Preliminary Injunction" is **DENIED** and this case is hereby **STAYED**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 21st day of July, 2026.

***/s/ María Antongiorgi-Jordán***
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**
